AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

FILED
United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

| In the Matter of the Search of | ) | |
|---|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) | Case No.  **21mr429** |
| THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER (505) 908-7149 ("BORJA PHONE 2") | ) ) ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ District of ___New Mexico___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841 and 846 | Distribution and possession with intent to distribute controlled substances; conspiracy to do the same |

The application is based on these facts:

The affidavit of Special Agent Jewellia Casiano is incorporated herein by reference. AUSA Peter J. Eicker has approved this search warrant.

- ☑ Continued on the attached sheet.
- ☑ Delayed notice of _____ days *(give exact ending date if more than 30 days:*  __07/29/2021__  *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Jewellia Casiano
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by __telephonically sworn and electronically signed__  *(specify reliable electronic means)*.

Date:  03/31/2021

*Judge's signature*

City and state:  Albuquerque, NM    Laura Fashing, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER 505-908-7149 WITH IMSI 310260000000000 ("BORJA PHONE 2") | Case No. _____<br><br>**Filed Under Seal** |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Jewellia Casiano, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.  I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) for information about the location of the cellular telephone assigned telephone number (505) 908-7149 and International Mobile Subscriber Identity ("IMSI") Number 310260000000000 ("**BORJA PHONE 2**"), with no listed subscriber, whose service provider is T-Mobile US, Inc. (T-Mobile), a wireless telephone service provider with headquarters at 4 Sylvan Way, Parsippany, New Jersey 07054.

2.  The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) and Federal Rule of Criminal Procedure 41 to require T-Mobile to disclose to the government the information further described in Section I of Attachment B.

3.  Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the government is concurrently seeking a separate order that complies with the requirements of the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127.

4.      I am a Special Agent with the United States Drug Enforcement Administration ("DEA"), and have been since May 2017. As such, I am a law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), and I am empowered by law to conduct investigations and to make arrests for criminal offenses, to include those enumerated in 18 U.S.C. § 2516.

5.      I graduated from the DEA Training Academy in Quantico, Virginia. While at the DEA Training Academy I became familiar with how controlled substances are consumed, manufactured, packaged, marketed, and distributed. I received training on surveillance and counter-surveillance operations, undercover operations, confidential source operations, criminal law, and investigations involving federal electronic surveillance statutes, to include Title III wiretaps, drug identification, search warrant executions, and vehicle stops.

6.      My experience as a Special Agent includes, but is not limited to, conducting surveillance, interviewing witnesses, writing affidavits for and executing search and seizure warrants, debriefing defendants and confidential sources and working with undercover agents and informants. I have received training and have experience in the investigation of violations of the federal drug and money laundering laws, including the offenses listed below. As a result, I am familiar with matters including, but not limited to, the means and methods used by drug traffickers and drug trafficking organizations to purchase, transport, store, and distribute illegal drugs and to hide profits generated from those transactions. I also have experience in analyzing and interpreting drug codes and cryptic dialogues used by drug traffickers. I have spoken to other law enforcement officers with similar experience.

7.      I make this affidavit based upon my own personal knowledge, which is derived from my participation in the investigation, as well as that of fellow agents and officers who have

participated in this and similar investigations. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

8. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 841 and 846 have been committed, are being committed, and will be committed by the user of **BORJA PHONE 2** there is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

9. The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated. *See* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

10. The United States, including DEA, is conducting a criminal investigation of Jesus Alberto JACOBO-BORJA regarding possible violations of 21 U.S.C. §§ 841 and 846.

11. In February 2021, Special Agents with the DEA met with a confidential source (hereafter referred to as "CS").[1] The CS informed Special Agents that one of his/her sources of supply for illegal drugs was a male who he/she knew as "Francisco." The CS told the Special Agents that Francisco's phone number was 505-450-7624 (BORJA PHONE 1). The CS was

---

[1] This CS has been vetted by DEA. This CS has provided trustworthy information that has been corroborated by DEA agents. This CS has never been found to be untruthful with agents and continues to provide reliable and accurate information.

provided direction to contact "Francisco" to find out if he/she is able to discuss future deals with "Francisco" and to find out what he is selling. The CS informed Special Agents that he/she had reached out to "Francisco" in late-February regarding purchasing drugs from him using BORJA PHONE 1. Francisco responded via BORJA PHONE 1 to the CS and agreed to meet with him/her in person. The CS and "Francisco" later met in person and discussed a future deal.

12. In March 2021, at the direction of Special Agents, the CS placed a phone call to BORJA PHONE 1 to speak with "Francisco" to discuss purchasing drugs. A male, later identified as Jesus JACOBO-BORJA, answered the phone and began speaking in Spanish to the CS. The CS and JACOBO-BORJA agreed to meet the next day so that JACOBO-Borja could provide two pounds of methamphetamine to the CS for $6,000. The CS also informed JACOBO-BORJA that he/she was going to bring an associate with him/her who was interested in buying from JACOBO-BORJA as well.[2]

13. In March 2021, a DEA Agent acting in an undercover capacity (hereafter referred to as "UC") met with the CS, and, at the direction of Special Agents, the CS placed a phone call to BORJA PHONE 1 to confirm the meet location of the Cottonwood Mall, located at 10000 Coors Bypass NW, Albuquerque, NM. JACOBO-BORJA confirmed the meet location. The CS and UC arrived at the meet location. While waiting, JACOBO-BORJA sent a SMS text message from BORJA PHONE 1 to the CS that he was "on his way". A short time later, the CS spoke to JACOBO-BORJA via BORJA PHONE 1 and JACOBO-BORJA advised he was caught in traffic but would be at the meet location soon.

---

[2] The "associate" was an undercover agent with DEA.

14. DEA agents observed a black Hyundai Genesis bearing Colorado temporary license plate 2865455 arrive at the meet location. Agents identified the driver and sole occupant of the vehicle as Jesus JACOBO-BORJA through law enforcement databases. Agents observed JACOBO-BORJA exit the vehicle with a brown paper bag in his hand. JACOBO-BORJA got into the CS vehicle and briefly spoke with the CS and the UC. JACOBO-BORJA handed the brown bag to the CS, who confirmed the methamphetamine was in the bag. The UC then paid JACOBO-BORJA and asked if the UC could contact JACOBO-BORJA in the future for more methamphetamine. JACOBO-BORJA agreed. He then exited the CS vehicle and returned to the Hyundai and departed the mall.

15. The substance in the brown paper bag received from JACOBO-BORJA was later field-tested and returned a positive result for the presence of methamphetamine. The weight of the methamphetamine was 937.4 gross grams.

16. On March 16, 2021, the UC sent a text message to BORJA PHONE 1 and asked if the UC could get two more "aguas" (waters), referring to two pounds of methamphetamine. JACOBO-BORJA replied that the UC could. The UC informed JACOBO-BORJA that the UC would be in contact with him again on March 18, 2021, for the purchase.

17. On the evening of March 17, 2021, the UC received a text message from **BORJA PHONE 2** explaining this was a new number for JACOBO-BORJA.

18. On March 18, 2021, the UC placed a recorded call to **BORJA PHONE 2** and spoke to JACOBO-BORJA. The UC recognized the voice on the phone as that of JACOBO-BORJA. The UC asked JACOBO-BORJA to meet the UC at the Coronado Mall in Albuquerque, NM, and he agreed. A short while after the call had been placed to **BORJA PHONE 2**, the UC observed JACOBO-BORJA arrive to the designated meet location in a black Hyundai SUV. JACOBO-

Borja then entered the UC vehicle with a GoGo Squeez brand cardboard box. JACOBO-BORJA allowed the UC to look inside the cardboard box and the UC was able to observe two plastic bags within that contained a white, crystalline substance, which was later field-tested for a presumptive positive of methamphetamine. The UC then provided JACOBO-BORJA with $6,000 - the agreed upon price from the prior transaction. JACOBO-BORJA then exited the UC vehicle. JACOBO-BORJA was then observed by surveillance units to enter his black Hyundai SUV and drive out of the parking lot. The methamphetamine received from JACOBO-BORJA was determined to weigh 940.2 gross grams.

19. Based on my training and experience, I know that it is common for drug traffickers to make use of multiple telephones in an effort to avoid law enforcement detection. I also know that drug traffickers often obtain new phones on a regular basis to make it more difficult for law enforcement to identify telephone numbers used by the traffickers. Based on the above-information, I believe that **BORJA PHONE 2** is a replacement phone for BORJA PHONE 1, and that JACOBO-BORJA has used, and will continue to use, **BORJA PHONE 2** to facilitate his drug trafficking activities.

20. Based on foregoing information, there is cause to believe that the user of **BORJA PHONE 2** has trafficked in drugs in violation of 21 U.S.C. §§ 841 and 846 and has used **BORJA PHONE 2** to do so. Furthermore, based on the continuous and on-going nature of these types of offense, there is probable cause to believe that the user of **BORJA PHONE 2** will continue to use **BORJA PHONE 2** to facilitate those offenses. Further, based upon my training and experience as a DEA Special Agent, I believe that location information for **BORJA PHONE 2** number, will facilitate surveillance and provide information and evidence regarding the drug trafficking activities of the user of **BORJA PHONE 2** including locations where the user of **BORJA PHONE**

**2** stores controlled substances and illegal proceeds, locations of transactions with sources of supply and other co-conspirators, and the identification of co-conspirators and criminal associates, as well as the user of **BORJA PHONE 2**'s involvement in the smuggling of controlled substances into the country and across state lines.

21. In my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

22. Based on my training, I know that T-Mobile can collect E-911 Phase II data about the location of **BORJA PHONE 2**, including by initiating a signal to determine the location of **BORJA PHONE 2** on T-Mobile network or with such other reference points as may be reasonably available.

23. Based on my training, I know that T-Mobile can collect cell-site data about **BORJA PHONE 2**. Based on my training, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as T-Mobile typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## AUTHORIZATION REQUEST

24. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

25. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 90 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of **BORJA PHONE 2** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510)

or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

26. I further request that the Court direct T-Mobile to disclose to the government any information described in Attachment B that is within the possession, custody, or control of T-Mobile. I also request that the Court direct T-Mobile to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with T-Mobile services. The government shall reasonably compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

27. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate **BORJA PHONE 2** outside of daytime hours.

28. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

[concluded on subsequent page]

29. This affidavit has been approved by AUSA Peter J. Eicker.

Respectfully Submitted,

_____
Jewellia Casiano, Special Agent
U.S. Drug Enforcement Administration

Subscribed and sworn telephonically and signed electronically on March 31, 2021

_____
LAURA FASHING
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

The cellular telephone assigned call number 505-908-7149 and International Mobile Subscriber Identity (IMSI) number 310260000000000 ("**BORJA PHONE 2**"), with no listed subscriber, whose service provider is T-Mobile US, Inc. (T-Mobile), a wireless telephone service provider with headquarters at 4 Sylvan Way, Parsippany, New Jersey 07054.

Records and information associated with the target cell phone that is within the possession, custody, or control of T-Mobile, including information about the location of the cellular telephone, even if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to be Seized

I. **Information to be Disclosed by the Provider**

All information about the location of **BORJA PHONE 2** described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of **BORJA PHONE 2**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of T-Mobile, T-Mobile is required to disclose the Location Information to the government. In addition, T-Mobile must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with T-Mobile services. The government shall compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

II. **Information to Be Seized by the Government**

All information described above in Section I that constitutes evidence of violations of 21 U.S.C. §§ 841 and 846 involving the user of **BORJA PHONE 2** and unidentified subject(s).

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.